**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| STEVEN SOUDER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-07-1996 |
| | * | |
| OFFICER TONCESSION, *et al.*, | * | |
| | * | |
| Defendants. | * | |

*********************************************************************

## **MEMORANDUM OPINION**

Plaintiff Steven Souder ("Souder") brings this action against Defendants Officer Justin Tonczyczyn[1] ("Officer Tonczyczyn"), Officer Bradley Schmidt, Officer Thomas Dufek, Officer Steven Pederson, and Montgomery County, Maryland (the "County"), alleging federal civil rights violations. On October 31, 2008, this Court issued an Order bifurcating the claims in Count Two against Montgomery County, pending resolution of claims in Count One against Officer Tonczyczyn. Currently pending before the Court is Defendant Officer Tonczyczyn's Motion for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues have been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT Defendant Officer Tonczyczyn's motion.

### **I. FACTUAL AND PROCEDURAL BACKGROUND**

On August 1, 2006, the Honorable Thomas L. Craven of the Circuit Court for Montgomery County, Maryland, issued an arrest warrant ordering any peace officer to take custody of Souder for

---

[1] In the Complaint, Souder named Officer "Toncession" as a defendant. The correct spelling is Tonczyczyn.

his failure to appear at a Court date for his charged delinquency of first degree burglary. On August 3, 2006, Officer Justin Tonczyczyn of the Montgomery County Department of Police was on patrol duty in Silver Spring, Maryland. (Tonczyczyn Dep. 23-25, Apr. 16, 2009.) The computer-aided dispatch (CAD) system announced that there was a warrant out for the arrest of Steven Souder and that Souder had just been seen entering his residency. Dan Murphy, the property manager of Vineyard Condominiums, where Souder lived, had called the County with that information, and the call appeared on the officers' mobile data terminals in their police vehicles.

Officer Tonczyczyn recognized Souder's name, as he was acquainted with him from his frequent patrol of the neighborhood, and so he responded to the call, driving to Souder's residency. He walked to the back door of Souder's apartment, as he knew the front entrance to the condominiums was often locked. Officers Brad Schmidt, Thomas Dufek, and Stephen Peterson also arrived in response to the call.

Plaintiff was in his bedroom with a friend named Jaleesa Hawkins, but when he noticed the shadows of the officers by the window, he walked to the back entrance of the apartment and stood in front of the sliding glass door. Souder observed Officer Tonczyczyn, who he knew by name, and three other officers he could identify by face, but not by name, standing in his patio. Souder partially opened the sliding glass door, and Officer Tonczyczyn told Souder there was a warrant out for his arrest because he missed a court date, and asked him to step outside. Souder responded that he thought the court date had been moved or that something else had been done to take care of it, and asked to see the warrant. Souder had been released from the Cheltenham Facility for Boys that day, and felt that the Facility would have notified him of any outstanding warrants for his arrest. Officer Tonczyczyn did not produce the warrant, because he did not have it, and for a couple of minutes

2

continued trying to convince Souder to step outside. Souder had his right hand on the door and tried to close it, but Officer Tonczyczyn put his foot in the door frame to stop the closing. Then, Souder turned his head around to talk to Jaleesa.

Souder alleges that Officer Tonczyczyn then grabbed his right hand and pulled him, and another officer gripped his left arm and pulled him outside. Officer Tonczyczyn denies that he is the officer who pulled Souder outside, though he acknowledges he grabbed Souder's arm. It is undisputed that other officers put their hands on Souder. Souder's face then hit the cement patio and an officer stomped his foot on his back, thereby cutting and bruising his face and bruising his back. The officers handcuffed Souder, and then the officers helped him stand up. Officers other than Tonczyczyn then took Souder into custody and drove him to the Alfred D. Noyes Children's Center-Secure ("Noyes"). The intake personnel at Noyes refused to admit Souder until he got medical treatment. Plaintiff was then treated at Shady Grove Hospital Center, and upon his release, processed and held at Noyes.

On July 27, 2007, Souder filed the present action. On October 31, 2008, this Court dismissed all counts other than those alleging federal civil rights violations, and bifurcated the claims against the individual officer and Montgomery County. (Docket No. 16). On May 18, 2009, Plaintiff filed motions to amend the Complaint (Docket No. 25) and add defendants (Docket No. 24), on the ground that during deposition, Officer Tonczyczyn had named other officers involved in the incident who "may have in fact assaulted Plaintiff," and whose names Plaintiff did not previously know. (Docket No. 24). The Court granted these motions, permitting the amendments because Plaintiff had mentioned these officers in the Complaint and Plaintiff had not learned their names until Tonczyczyn's deposition. On June 16, 2009, Souder filed an

3

Amended Complaint reiterating Count One of the Complaint against Officer Tonczyczyn and adding Officers Bradley Schmidt, Thomas Dufek, and Steven Pederson as defendants. Souder does not make specific allegations against these officers or particularize their involvement in the incident, however. The only remaining claims in the case are Count One alleging Officer Tonczyczyn violated Souder's Fourth Amendment rights in effecting the arrest, and the bifurcated and deferred *Monell*-type claim against Montgomery County. Currently pending before the Court is Defendant Officer Tonczyczyn's Motion for Summary Judgment (Docket No. 31).

## II.  STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998).  Additionally, hearsay

statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

Defendant Tonczyczyn moves for summary judgment on Plaintiff's allegation that Defendant violated the Fourth Amendment while executing the arrest. Defendant Tonczyczyn argues that the arrest was constitutional because it was based on a valid arrest warrant, and that he did not need to confirm the warrant or show the warrant to the Plaintiff. Also, because Tonczyczyn had knowledge of a valid arrest warrant, he argues the physical seizure from the doorway zone was appropriate. The excessive force claim also fails, according to Defendant Tonczyczyn, because it was reasonable for him to grab Plaintiff after he refused to exit the house. Finally, Tonczyczyn argues he is entitled to qualified immunity on the Fourth Amendment claim as there was no constitutional violation or violation of clearly established constitutional law.

#### A.   Validity of the Arrest

Plaintiff argues that the August 3, 2006, arrest was invalid under the Fourth Amendment because Officer Tonczyczyn did not show Plaintiff a warrant, despite Plaintiff's requests, and Officer Tonczyczyn did not confirm with proper authorities that a warrant for Souder's arrest actually existed. Plaintiff contends that Tonczyczyn violated Montgomery County Police Procedures and the Fourth Amendment because he did not call the proper authorities to make sure there actually was a warrant, nor did he know if any officer had confirmed there was a warrant. Instead, Defendant Tonczyczyn merely heard that a non-officer had reported the

5

location of a suspect for whom there was a warrant, and pursued the arrest. (Docket No. 38). Defendant argues that the Fourth Amendment does not require that an officer display a warrant to a suspect before executing an arrest, so long as the arrest warrant really does exist. Defendant also contends that because Officer Tonczyczyn acted pursuant to a valid warrant, the arrest was constitutional, and that Plaintiff has no legal basis for the assertion that an arrest is not legal if based on a valid, but unconfirmed warrant. Moreover, Defendant argues, notice of the arrest warrant came from a police source—the police dispatcher; not merely a report from a citizen.

The Court agrees with Defendant that Officer Tonczyczyn did not violate the Fourth Amendment by arresting Souder pursuant to a valid warrant of which a police source informed him. In the Fourth Circuit, an arrest is acceptable under the Fourth Amendment if made pursuant to a valid arrest warrant. "It is well established that when an arrest and subsequent detention are undertaken pursuant to a facially valid warrant, there is no violation of the Fourth Amendment." *See Peacock v. Mayor & City Council of Balt.*, 199 F. Supp. 2d 306, 309 (D. Md. 2002) (finding a man's ten-day detention pursuant to a warrant consistent with the Fourth Amendment because it was facially valid in the Sherriff's "in house computer system," even though the warrant was actually invalid as the suspect had already served the sentence for which the warrant had been issued). "The Fourth Circuit has specifically held that an arresting officer has no affirmative obligation to investigate the claims of an arrestee." *Peacock*, 199 F. Supp. 2d at 309 (citing *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989) (finding an arrest based on a recalled warrant valid, despite suspect's protests on the scene, because arrest was made pursuant to a facially valid warrant)).

In this case, the dispositive issue is whether the arrest warrant was valid, not whether the

officer confirmed information he received from the police dispatcher. Plaintiff does not dispute that a valid warrant existed. (Souder Dep. 17-18). Plaintiff's argument that Officer Tonczyczyn's arrest was inconsistent with the Fourth Amendment because Tonczyczyn did not confirm the information about the warrant from the CAD, fails. Plaintiff cites no cases for this argument and this Court has not found any. Moreover, many cases hold that officers have no affirmative duty to investigate a plaintiff's claim that a warrant is invalid. *See Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989). Where a valid police source has informed an officer of a warrant and the warrant is valid, the Fourth Amendment does not prevent the officer from acting on the warrant.

Plaintiff's second argument fails because this Circuit has refused to invalidate arrests merely because the arresting officer did not have actual possession of the valid arrest warrant when executing the arrest. *See, e.g.*, *United States v. Johnson*, 48 Fed. Appx. 871, 873 (4th Cir. 2002) (per curiam) (holding arresting officer does not need possession of warrant at time of arrest). Both the federal and state rules governing arrests allow an arrest based on a valid warrant, even if an officer is not in possession of it, if the officer explains the basis for the arrest and provides the warrant when he or she can. *See* Fed. R. Crim. P. 4(c)(3)(A) ("If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible."); Md. Rule 4-212(e) ("Unless the warrant and charging document are served at the time of the arrest, the officer shall inform the defendant of the nature of the offense charged and of the fact that a warrant has been issued. A copy of the warrant and charging document shall be served on the defendant promptly after the arrest.") There is no apparent legal basis for Plaintiff's argument that Defendant was required to show him the

warrant, where Defendant did not possess the warrant, but did notify the Plaintiff of the information contained in the warrant. Therefore, the Court will not deem the arrest invalid on the ground that Officer Tonczyczyn did not confirm the warrant or show Plaintiff the warrant.

### B.  Physical Seizure

Plaintiff also claims that Defendant Tonczyczyn violated the Fourth Amendment by passing through the doorway of his home to effect the arrest pursuant to an unconfirmed warrant. Defendant argues that officers may constitutionally enter into a home to effect an arrest if they have a valid arrest warrant, even if it is unconfirmed. The Court agrees with Defendant. *Payton v. New York* clearly established that officers with valid arrest warrants may enter a home to effect an arrest. 445 U.S. 573, 603 (1980). Courts discussing the validity of in-home arrests pursuant to warrants have not distinguished between confirmed and unconfirmed warrants, and accordingly, neither will this Court.

### C.  Excessive Force

Plaintiff argues that the method and force Officer Tonczyczyn used in arresting him were not reasonable and thus violated the Fourth Amendment. Plaintiff contends that because he was to be arrested for the non-violent crime of failure to appear for a court hearing regarding a burglary, and because Defendant did not know Plaintiff to have a violent history, the force Defendant used was unreasonable. Plaintiff alleges Tonczyczyn pulled him out of his apartment with such force that he hit the ground, face first, and an officer stomped his foot on Plaintiff's back, causing injuries requiring medical attention. Finally, Plaintiff argues that whether this level of force was reasonable is not a question of law, but a question of fact for the jury. Defendant, on the other hand, contends that Plaintiff only alleges that Officer Tonczyczyn grabbed his wrist,

and a wrist-grab does not rise to the level of a Fourth Amendment violation.

In assessing whether a police officer's use of force in effecting an arrest is reasonable under the Fourth Amendment, the Court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Conner*, 490 U.S. 386, 396-97 (1989) (citations omitted). There is not an outright ban on a police officer's use of force, but rather, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Courts must assess "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," to determine if the level of force was appropriate. *Id.* Additionally, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citations omitted). Thus, Plaintiff's argument that the jury must decide the issue of reasonableness is incorrect—this Court may, and will, do so.

Because Plaintiff does not allege that Officer Tonczyczyn specifically used any force in effecting the arrest beyond grabbing his arm, near his wrist, and pulling him out of the door, after Souder had refused to step outside upon being informed of the warrant for his arrest, this Court finds that the force Tonczyczyn used against Souder was not excessive under the Fourth Amendment. Souder testified that Officer Tonczyczyn grabbed his arm, and that another officer grabbed him and pulled him out of the door simultaneously, and he could not see enough to

9

identify individuals after that point. In his Deposition, Souder describes that he was pulled outside, but that he could not identify individuals beyond the point of Tonczyczyn's initial grab:

> [i]t was right hand grabbed, pull, and then I felt my left arm getting jerked up, then smack, hit the ground, face hit the ground…I know Tonczyczyn grabbed a hold of me, yanked, and his arm, he still had my right arm, another officer grabbed my left arm and people grabbed me . . .

(Souder Dep. 57:1-10, May 7, 2009).

The Court agrees with Defendant that its grabbing Souder's arm and pulling him out the door was reasonable under the Fourth Amendment in this case. Souder was resisting arrest by refusing to step outside after learning of the warrant. To effect the arrest, the Officer was left with the choice of either entering the house or pulling Defendant outside—both options would have required use of force. The Supreme Court has made clear that courts must keep in mind that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving," and courts must evaluate the reasonableness from the perspective of a police officer at the scene. *Graham v. Connor*, 490 U.S. 386, 396-397 (U.S. 1989). In this case, it is not unreasonable that confronted with these two choices, Officer Tonczyczyn would use some force in grabbing Plaintiff's arm to pull him outside to effect the arrest. This decision is consistent with this Circuit's jurisprudence in this area. This Circuit has found excessive the force of grabbing a suspect from behind, "plac[ing] him in a headlock, spin[ning] him around and throw[ing] him head-first to the ground" when he was already handcuffed, and then striking him "in the back of the head with his forearm and pound[ing] his knee into the center of Young's back" when the suspect was lying face down and handcuffed, where the suspect "was stopped for a minor traffic violation, was completely cooperative and posed little, if no, threat once he was handcuffed behind his back." *Young v. Prince George's*

*County*, 355 F.3d 751, 758 (4th Cir. 2004); *see also Cowles v. Peterson*, 344 F. Supp. 2d 472, 483 (E.D. Va. 2004) ("Acting on a hunch that an individual might have some small quantity of drugs, an objective officer conducting an investigatory stop of an individual with whom he was familiar and did not consider dangerous, and who was not attempting to flee, could not find it reasonable to strike the individual twice in the forehead with a can of mace, with sufficient force to cause a contusion."). *C.f.. McCaskill v. Yankalunas*, 245 Fed. Appx. 274, 277-278 (4th Cir. 2007) ("it was reasonable under the circumstances for an officer to push McCaskill down onto a mattress while securing the house after a no-knock entry, whether or not her hands were raised" and regardless of the fact that she was pregnant and had a miscarriage two days later). But, here, where an officer is faced with the choice of using force against a suspect who is blocking an entrance, or pulling the person out of the house, because a suspect does not cooperate and is still a threat as the suspect is not handcuffed, the officer should not be penalized for pulling the suspect out of the house. Tonczyczyn has offered no proof in affidavits or depositions that Tonczyczyn used any force beyond pulling Souder out of the house. The Court notes that there was probably little risk of harm to the Officer as he had three other officers with him outside, and Souder's arrest warrant was for a nonviolent crime, thus making it less probable that he would act violently against the officers. But, Souder's non-cooperation, and the officer's need to effect the arrest pursuant to a warrant, make Officer Tonczyczyn's arm grab and pull reasonable. While the Court recognizes that Souder may have been subjected to more force than necessary to effect the arrest, as another officer joined in this pull and the force propelled Souder onto the cement, and an officer apparently stepped on Souder, Tonczyczyn cannot be held responsible where he has not been identified as the perpetrator. To survive a motion for summary judgment, Plaintiff

needs to point to specific proof in the record. Therefore, the Court finds that Defendant Tonczyczyn's use of force was reasonable, and thus consistent with the Fourth Amendment.

### D. Qualified Immunity

Finally, Officer Tonczyczyn argues that he is entitled to qualified immunity from Souder's Fourth Amendment claim. Defendant argues that it is immune from suit for effecting the arrest because it did not violate a clearly established constitutional right in doing so. (Docket No. 31 at 13). Defendant contends "no reasonable officer in Officer Tonczyczyn's position would have believed that he was violating Plaintiff's constitutional rights" by grabbing his wrist. (Docket No. 31 at 13). Plaintiff responds that police officers are only entitled to immunity when they are acting without malice, and that although there is no evidence Defendant acted with evil motive, his actions were sufficiently reckless to show malice. (Docket No. 38).

A court determining whether an officer has qualified immunity must consider two factors: 1) if the facts alleged by the Plaintiff could establish a violation of constitutional rights, and 2) if the right at issue was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194 (2001). In *Pearson*, the Supreme Court held these factors could be addressed in any order. *Pearson v. Callahan*, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Regarding the "clearly established" prong, "[o]fficers will be entitled to qualified immunity where, although they correctly perceived all the relevant facts, they made reasonable mistakes as to the legality of their actions. The key is whether existing law gave the officers fair warning that their conduct would be unconstitutional." *Cowles v. Peterson*, 344 F. Supp. 2d 472, 483 (E.D. Va. 2004) (quotation marks and citations omitted). The Court agrees with Defendant that Plaintiff has mistakenly cited the standard public officials must meet to have immunity from

state tort claims, rather than the standard public officials must meet to have immunity from federal constitutional claims—malice is not an issue in determining qualified immunity in this case.

As the Court has already found Souder fails to establish Officer Tonczyczyn violated the Fourth Amendment in effecting the arrest, Souder has failed to establish one of the two factors necessary to deny Officer Tonczyczyn entitlement to qualified immunity. Because Officer Tonczyczyn did not violate the Constitution in effecting the arrest, he is entitled to qualified immunity on this claim.

### E.    Defendants Schmidt, Dufek, and Pederson

In the Motion to Dismiss and the Response to this Motion, the parties state that the only remaining count in this case is Count One against Officer Tonczyczyn. (Docket Nos. 31 & 38). Thus both parties seem to acknowledge that though Plaintiff names Defendants Schmidt, Dufek, and Pederson as defendants in this case, Plaintiff makes no claims against them. Though the Court allowed Plaintiff to amend its Complaint to include these additional officers in the Complaint after Tonczyczyn referred to them by name as the other officers involved in the incident, Plaintiff makes no specific allegations against them. Plaintiff implies that these additional officers contributed to the force Souder suffered in his arrest, but such vague implications cannot constitute actual claims to be adjudicated by this Court. Without particularized evidence against these defendants, and without claims against them, the Court must dismiss these defendants from the case. Accordingly, the Court dismisses Officers Bradley Schmidt, Thomas Dufek, and Steven Pederson, from this case, as Plaintiff makes no claims against them.

F.      **Claims against Montgomery County**

On October 31, 2008, the Court bifurcated and deferred the claims against Montgomery County in this case, pending resolution of the claim against the individual officer. (Docket No. 16). A *Monell* claim alleging a local government has permitted a pattern and practice of improper conduct can only survive if the plaintiff successfully alleges a constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (U.S. 1978) ("the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort") (citation omitted). To make out a § 1983 claim, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (citation omitted). Because the Court agrees with Defendant that Plaintiff's claims against Officer Tonczyczyn fail as a matter of law, Plaintiff's claims against Montgomery County must also fail. Plaintiff has not alleged a constitutional deprivation, and thus Montgomery County cannot be held liable for any constitutional deprivation. Thus, the Court grants Defendant's Motion to Dismiss Count Two against Montgomery County (Docket No. 9), the Count which the Court previously bifurcated and deferred. (Docket No. 16).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. (Docket No. 31).  A separate Order will follow.


<u>November 30, 2009</u>                                   <u>          /s/          </u>
             Date                                           Alexander Williams, Jr.
                                                            United States District Judge